Bobby A.  Ghajar (SBN 198719)
Bobby.Ghajar@pillsburylaw.com
Kelly W.  Craven (SBN 248050)
Kelly.Craven@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

Ben M.  Davidson (SBN 181464)
bdavidson@davidson-lawfirm.com
DAVIDSON LAW GROUP
11377 West Olympic Boulevard
Los Angeles, CA  90064
Telephone (310) 473-2300
Facsimile (310) 473-2941

Attorneys for Plaintiffs
Spin Master, Ltd., Justin Heimberg, and David Gomberg

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SPIN MASTER, LTD., et al.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ZOBMONDO ENTERTAINMENT, LLC, et al.,<br><br>        Defendants.<br><br>_____<br><br>AND RELATED CROSS-CLAIMS.<br><br>_____<br><br>AND CONSOLIDATED ACTION. | CASE NO.  CV06-3459 ABC(JTLx)<br>Consolidated with<br>CASE NO. CV07-0571 ABC(JTLx)<br><br>Judge:  The Hon.  Audrey B.  Collins<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT CONSISTENT WITH SPECIAL VERDICT, PERMANENT INJUNCTION AND OTHER RELIEF**<br><br>Hearing Date:  December 3, 2012<br><br>Time:          10:00 a.m.<br><br>Courtroom:     680<br><br>Trial date:      October 23, 2012<br>Verdict date: November 5, 2012 |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   THE COURT SHOULD ENTER A JUDGMENT OF PERMANENT
      INJUNCTION AGAINST DEFENDANTS' USE OF 'WOULD YOU
      RATHER…?" AND CONFUSINGLY SIMILAR MARKS ................................ 1

      A.    A Permanent Injunction Is Warranted Here ................................... 2

      B.    The Court Should Issue a Permanent Injunction That Prevents
            Defendants From Using WOULD YOU RATHER…? And Any
            Confusingly Similar Variations ................................................. 11

III.  THE COURT SHOULD ORDER DEFENDANTS TO DELIVER UP
      INFRINGING MATERIALS FOR DESTRUCTION ........................................ 15

IV.   THE COURT SHOULD ORDER DEFENDANTS TO SUBMIT A
      REPORT OF COMPLIANCE WITH THE COURT'S JUDGMENT .............. 16

V.    PREJUDGMENT INTEREST SHOULD ACCRUE ON THE MONEY
      JUDGMENT ............................................................................. 17

VI.   CONCLUSION ................................................................. 18

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

5

AAA, Inc. v. Triple A Auto Glass, LLC
  2012 U.S. Dist. LEXIS 45781 (D. Ariz. Apr. 2, 2012) ................................. 13

6

Am. Honda Motor Co. v. Two Wheel Corp.
  918 F.2d 1060 (2d Cir. 1990)......................................................................... 17

7

8

American Honda Motor Co., Inc. v. Pro-Line Protoform
  325 F.Supp.2d 1081 (C.D. Cal. 2004) ..................................................... 12, 16

9

Apple Computer, Inc. v. Formula Int'l Inc.
  725 F.2d 521 (9th Cir. 1984) ........................................................................... 3

10

11

Bosley Med. Inst., Inc. v. Kremer
  403 F.3d 672 (9th Cir. 2005) ......................................................................... 10

12

Broadcast Music, Inc. v. United States ShoeCorp.
  211 U.S.P.Q. 43 (C.D. Cal., December 29, 1980)......................................... 12

13

14

Canon U.S.A., Inc. v. Tiger Wholesale
  No. CV 92-6382, 1994 WL 219995 (C.D. Cal., March 29, 1994) ............... 16

15

Century 21 Real Estate Corp. v. Sandlin
  846 F.2d 1175 (9th Cir. 1988) ......................................................................... 7

16

Chanel, Inc. v. Vallego
  No. 04-2449, slip op. at 8 (C.D. Cal., February 4, 2005) ............................. 12

17

18

City of Carlsbad v. Shah
  850 F.Supp.2d 1087 (S.D. Cal. 2012).............................................. 3, 8, 9, 16

19

20

Continental Airlines, Inc. v. Intra Brokers, Inc.
  24 F.3d 1099 (9th Cir. 1994) ........................................................................... 7

21

Cyclone USA, Inc. v. LL&C Dealer Servs., LLC
  2010 U.S. Dist. LEXIS 51171 (C.D. Cal. May 24, 2010) ............................ 17

22

Dick Bruhn, Inc.
  793 F.2d at 1135-36 ......................................................................................... 9

23

24

Diller v. Barry Driller, Inc.
  2012 U.S. Dist. LEXIS 133515 (C.D. Cal. Sept. 10, 2012) (Collins, J.) ....... 3

25

Donell v. Kowell
  533 F.3d 762 (9th Cir. 2008) ......................................................................... 17

26

27

eBay Inc. v. MercExchange, L.L.C.
  547 U.S. 388 (2006)......................................................................................... 2

28

El Pollo Loco, Inc. v. Hashim
  316 F.3d 1032 (9th Cir. 2003) ................................................................................. 3

Exxon Mobil Corp. v. Future Group LLC
  2012 WL 2553560 (E.D. Cal. 2012) ..................................................................... 12

Ford Motor Co. v. Kuan Tong Industrial Co.
  697 F. Supp. 1108 (N.D. Cal. 1987) .................................................................... 17

Fritcher v. Health Care Service Corp.
  301 F.3d 811 (7th Cir. 2002) ................................................................................ 18

Gillette Co. v. Wilkinson Sword, Inc.
  1992 U.S. Dist. LEXIS 1265 (S.D.N.Y., Feb. 3, 1992) ....................................... 18

Gorenstein Ents., Inc. v. Quality Care-USA, Inc.
  874 F.2d 431 (7th Cir. 1989) ................................................................................ 17

GoTo.com, Inc. v. Walt Disney Co.
  202 F.3d 1199 (9th Cir. 2000) ........................................................................ 3, 13

Gucci America, Inc. v. Pieta
  No. 04-9626, 2006 U.S. Dist. LEXIS 96701 (C.D. Cal., January 23, 2006) ............... 12

Hokto Kinoko Co. v . Concord Farms, Inc.
  810 F.Supp. 2d 1013 (C.D. Cal. 2011) ............................................................ 3, 10

Int'l Consulting Services v. Cheap Tickets, Inc.
  2007 U.S. Dist. LEXIS 71689 (S.D.N.Y. 2007) .................................................. 17

Internet Specialties West v. Milton-DiGiorgio Enters., Inc.
  559 F.3d 985 (9th Cir. 2009) ................................................................................ 14

Inwood Labs., Inc. v. Ives Labs. Inc.
  456 U.S. 844 (1982) .............................................................................................. 10

Louis Vuitton, S.A. v. After Dark Boutique
  680 F. Supp. 1507 (N.D. Fla. 1988) .................................................................... 17

Marlyn Nutraceuticals v. Mucos Pharma GmbH
  571 F.3d 873 (9th Cir. 2009) .................................................................................. 3

MGM Studios, Inc. v. Grokster
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................... 12, 14

Mortgage Elec. Registration Sys. v. Brosnan
  2009 U.S. Dist. LEXIS 87596 (N.D. Cal. 2009) .................................................... 2

Nike, Inc. v. Nikepal Int'l, Inc.
  05-CV-1468, 2007 U.S. Dist. LEXIS 66686 (E.D. Cal., September 7, 2007) .............. 7

Optician's Association of America v. Independent Opticians of America
  920 F.2d 187 (3d Cir. 1990) ................................................................................. 10

Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.
  640 F. Supp. 928 (S.D.N.Y. 1986) ...................................................................... 10

Partners for Health and Home, L.P. v. Yang
 2012 WL 1079180 (C.D. Cal. 2012) ....................................................... 3

Perfumebay v. eBay
 506 F.3d 1165 (9th Cir. 2007) ............................................................... 13

Playboy Ents., Inc. v. Chen
 CV96-3417, 1997 U.S. Dist. LEXIS 21916 (C.D. Cal., October 1, 1997) .......... 12, 15

Plough, Inc. v. Kreis Labs.
 314 F.2d 635 (9th Cir. 1963) ................................................................ 12

Polo Fashions, Inc. v. Dick Bruhn, Inc.
 793 F.2d 1132 (9th Cir. 1986) ................................................................. 7

Reno Air Racing Ass'n v. McCord
 452 F.3d 1126 (9th Cir. 2006) ................................................ 2, 10, 12, 15

Resource Lenders, Inc. v. Source Solutions, Inc.
 404 F.Supp.2d 1232 (E.D Cal. 2005) ...................................................... 10

Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.
 2003 WL 23705747 (C.D. Cal. 2003) ...................................................... 17

Schneider v. County of San Diego
 285 F.3d 784 (9th Cir. 2002) ................................................................ 17

Sinhdarella, Inc. v. Vu
 C07-04353, 2008 U.S. Dist. LEXIS 14742 (N.D. Cal., Feb. 12, 2008) .................... 12

Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.
 240 F.3d 832 (9th Cir. 2001) .................................................................. 3

SunEarth, Inc. v. Sun Earth Solar Power Co.
 846 F. Supp. 2d 1063 (N.D. Cal. 2012) .................................................... 2

Trafficschool.com v. Edriver Inc.
 653 F.3d 820 (9th Cir. 2011) ................................................................ 10

Virgin Enters., Ltd. v. Virgin Petroleum, Inc.
 CV99-12826, 2000 U.S. Dist. LEXIS 8100 (C.D. Cal., January 19, 2000) ............... 12

Wecosign, Inc. v. IFG Holdings, Inc.
 845 F.Supp.2d 1072 (C.D. Cal. 2012) ..................................................... 12

West Virginia v. United States
 479 U.S. 305 (1987) ........................................................................... 17

William R. Warner & Co. v. Eli Lilly & Co.
 265 U.S. 526 (1924) ........................................................................... 15

Wolfard Glassblowing Co. v. Vanbragt
 118 F.3d 1320 (9th Cir. 1997) ............................................................... 15

Zobmondo Entm't, LLC v. Falls Media, LLC
 602 F.3d 1108 (9th Cir. 2010) ............................................................... 11

1

### Statutes and Codes

2

15 United States Code
   Section 1116(a) ......................................................................... 1, 17
   Section 1118 .................................................................................. 16

3

4

### Rules and Regulations

5

Federal Rules of Civil Procedure
   Rule 58(b)(2)(A) .............................................................................. 1
   Rule 65(d) ...................................................................................... 11

6

7

### Other Authorities

8

5 McCarthy on Trademarks and Unfair Competition § 30:2, at 30-8-9 (cum. supp. 3/2007) ......................................................................................... 3, 7

9

10

5 McCarthy, Trademarks and Unfair Competition, §30:11 (4th ed. 2011) ...................... 8

11

5 McCarthy on Trademarks and Unfair Competition, § 30:4, at 30-13 ........................ 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs respectfully submit this Memorandum of Points and Authorities in Support of their Motion For Entry of Judgment Consistent With Special Verdict and Permanent Injunction.

## I.   <u>INTRODUCTION</u>

Following an eight-day trial and the Court's instructions, the jury returned its unanimous verdict that Plaintiffs "WOULD YOU RATHER…?" trademark is valid and protectable, and that Defendants infringed Plaintiffs' "WOULD YOU RATHER…?" trademark and unfairly competed through conduct consisting of oppression, malice or fraud.  Pursuant to Federal Rule of Civil Procedure 58(b)(2)(A), "the court must promptly approve the form of the judgment" when the jury returns such a special verdict.  The Proposed Judgment (attached as Exhibit A), must be consistent with the special verdict; therefore, the Court should enter judgment on the jury's award of compensatory damages in the amount of $5,109,040 and punitive damages in the amount of $3,500,000, as well as the other monetary and ancillary relief requested therein and below.

Additionally, based on the jury's verdict, the record in this case, and principles of equity, the Court should enter judgment permanently enjoining Defendants from using Plaintiff's WOULD YOU RATHER…? trademark, or anything confusingly similar, on any products and services, including but not limited to board games, card games, books, or other related entertainment products, as described below.

## II.   THE COURT SHOULD ENTER A JUDGMENT OF PERMANENT INJUNCTION AGAINST DEFENDANTS' USE OF 'WOULD YOU RATHER…?" AND CONFUSINGLY SIMILAR MARKS

Section 34 of the Lanham Act vests the District Courts with the "power to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of the trademark owner.  15 U.S.C. § 1116(a).  To prevent further willful or other violation of Plaintiffs' rights, the

-1-

1  Court should permanently enjoin Defendants from using the "WOULD YOU

2  RATHER…?" mark, and any other marks confusingly similar to Plaintiffs' trademark.

3       **A.    A Permanent Injunction Is Warranted Here**

4       According to the principles of equity, a permanent injunction is appropriate upon

5  a showing that 1) the plaintiff has suffered an irreparable injury; 2) remedies available at

6  law are inadequate; 3) considering the balance of hardships between the parties, a

7  remedy in equity is warranted; and 4) the public interest would not be disserved by a

8  permanent injunction.  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1138 n. 11

9  (9th Cir. 2006) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

10  Each of these factors weigh in favor of the entry of permanent injunctive relief.  There

11  should be no dispute that Defendants' infringement should at long last be enjoined.

12  Defendants' own counsel, during argument in punitive damages phase, conceded that

13  Defendants would have to take their infringing products off the shelves.  Craven Decl.

14  ¶2.  And of course, they should be.

15       **1.  Plaintiffs Were Irreparably Harmed by Defendants' Infringement**

16             **and Unfair Competition**

17       The jury's verdict confirms that the Court should enter a permanent injunction

18  here preventing further infringement and unfair competition with Plaintiffs' trademark

19  rights.  Defendants have successfully inhibited, harmed, and undermined Plaintiffs for

20  years using their WOULD YOU RATHER…? trademark.  Under traditional equitable

21  principles, Plaintiffs been irreparably harmed.  For example, even in the

22  preliminary injunction context (where courts must balance the likelihood of success on

23  the merits), "the potential loss of good will or the loss of the ability to control one's

24  reputation may constitute irreparable harm."  *SunEarth, Inc. v. Sun Earth Solar Power*

25  *Co.*, 846 F. Supp. 2d 1063 (N.D. Cal. 2012) (quoting *Mortgage Elec. Registration Sys.*

26  *v. Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *24 (N.D. Cal. 2009) (citing *Stuhlbarg*

27  *Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir.

28                       -2-

1   2001); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984))).

2   This *potential* loss is sufficient, even if not actually proven.  *See Marlyn Nutraceuticals*

3   *v. Mucos Pharma GmbH,* 571 F.3d 873, 877 (9th Cir. 2009) ("Because the court found a

4   likelihood of success on the merits, it reasonably presumed irreparable injury." ); *Diller*

5   *v. Barry Driller, Inc*., 2012 U.S. Dist. LEXIS 133515, *25 (C.D. Cal. Sept. 10, 2012)

6   (Collins, J.) (granting preliminary injunction based in part on likely irreparable harm to

7   the plaintiff's reputation and goodwill).  "In trademark and unfair competition matters,

8   the controlling legal standard for the remedy of an injunction is not whether the plaintiff

9   can prove that actual damage has occurred to its goodwill and reputation.  The law

10  views the owner of a trademark as damaged by an infringing use which places the

11  owner's reputation beyond its control, though no loss in business is shown."  5

12  McCarthy on Trademarks and Unfair Competition § 30:2, at 30-8-9 (cum. supp. 3/2007)

13  (quotations omitted).

14      In this case, Plaintiffs did much more than prove a *potential* loss of good will or

15  the potential loss of the ability to control their reputation.  The trial record is replete

16  with evidence of actual damage to Plaintiffs' ability to control their good will and

17  reputation.[1]  Plaintiffs proved that the Defendants always intended to and did, in fact,

18

---

19  [1] Some district courts have considered whether the presumption of irreparable harm continues to apply in copyright and patent cases, where goodwill; right to control one's
20  name; continuing consumer confusion; and loss of rights are not at issue (as they are in trademark cases).  Plaintiffs are unaware of any Ninth Circuit decision holding that the
21  presumption does not apply in Lanham Act and unfair competition cases. *See, e.g., Marlyn,* 571 F.3d at 877 (affirming district court's presumption of irreparable injury in
22  trademark case following a finding of likelihood of success on the merits at the preliminary injunction stage).  As noted above, courts in this circuit have continued to
23  enter injunctive relief to prevent further injury to plaintiffs whose trademarks have been infringed. *Hokto Kinoko Co. v . Concord Farms, Inc.,* 810 F.Supp. 2d 1013, 1032 (C.D.
24  Cal. 2011) ("In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will
25  suffer irreparable harm if injunctive relief is not granted."); *Partners for Health and Home, L.P. v. Yang,* 2012 WL 1079180 at *5 (C.D. Cal. 2012); *City of Carlsbad v.
26  Shah*, 850 F.Supp.2d 1087, 1113 (S.D. Cal. 2012) (trademark infringement "clearly gives rise to irreparable injury").  Indeed, the presumption has been long-standing in
27  trademark cases. *See El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1038 (9th Cir. 2003) (quoting *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 n.4 (9th Cir.

28

1  "seize control" of the WOULD YOU RATHER…? mark, claiming to be its rightful

2  owners.  *See, e.g.* Craven Decl. Exs. 24, 62.  An email between Defendant Mr. Horn and

3  his father evidenced a plan to take over control of the mark and keep them from entering

4  the market.  *Id.* at Exs. 53; E at Tr. 730-731.  That plan was put into effect by

5  Defendants.

6       As the jury learned, Mr. Horn told Plaintiff Justin Heimberg that he was planning

7  to use the WOULD YOU RATHER…? mark for board games such that retailers would

8  be familiar with his (infringing) game *and* would regard Plaintiffs' game as a

9  "knockoff."  *Id*. at Ex. 139.  The result was that Plaintiffs were shut out of many retail

10 channels for years and were widely regarded by retailers and consumers alike as the

11 company selling a "knockoff," infringing product.  *See, e.g., id.* at Exs. 68-90.  This

12 phenomenon was explained by Defendants' own sales representative, Neil Kohler.

13 Testifying through his deposition, Mr. Kohler explained that the first company to use a

14 brand for particular product categories has a "head start" advantage in those categories

15 that allows it to keep the second entrant (here, the trademark owner)—the perceived

16 "knock off"—off retailer shelves.  *Id*. at Ex. E: Tr. at 144:17-146:6.

17      Because of Defendants' pervasive infringement, Plaintiffs have been perceived as

18 a knock off for years.  They have been blocked from selling their products in significant

19 retail outlets by infringing sales of their own brand.  *Id.* at Exs. 664, 665.  As the

20 evidence demonstrated, retailers such as Target refuse to carry two games using the

21 WOULD YOU RATHER…? brand (and Target still will not carry Plaintiffs' game and

22 is carrying Zobmondo's infringing products).  Kristoffy Decl. ¶ 3.  Moreover, Plaintiffs

23 have lost the ability to effectively market their brand with advertising expenditures and

24 a promotional campaign typical of its other game brands.  *Id.* at ¶ 4.  Beyond the risk of

25 further consumer confusion, such promotional expenditures by Plaintiffs would have

26 ─────────────────────────

27 2000)).  The Court need not decide whether a categorical presumption of irreparable
   injury still exists because, as explained above, actual irreparable harm exists here.

28                                    -4-      Case Nos. CV-06-3459-ABC and CV-07-0571-ABC
                                             MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF
                                             JUDGMENT CONSISTENT WITH SPECIAL VERDICT AND
                                             PERMANENT INJUNCTION

1  promoted the Defendants' infringing sales.  *Id.*  Defendants, on the other hand,

2  exercised ownership of Plaintiffs' brand, exploiting demand for the brand among a

3  million consumers for the past decade—consumers to whom Plaintiffs have lost the

4  opportunity to make sales.

5      Defendants also used Plaintiffs' brand as their own "flagship brand," using profits

6  from its sales to acquire other brands (such as the "Ladybug Game") and to introduce

7  retailers and consumers to them.  Craven Decl. Ex. 588 at p.6.  These lost opportunities

8  can never return to Messrs. Heimberg and Gomberg or their licensees, and no amount of

9  compensation for lost profits from the jury, alone, could fully return to Plaintiffs what

10 they would have had if Defendants had not seized their WOULD YOU RATHER…?

11 brand and engaged in unfair competition.  What Defendants did to Plaintiffs was, quite

12 simply, irreparable harm.

13     As one example, Plaintiffs and their predecessors' inability to control their

14 reputation over the years cost them valuable opportunities to make a television game

15 using the WOULD YOU RATHER…? brand.  As the jury learned, there was confusion

16 surrounding ownership of the WOULD YOU RATHER…? mark, including in the

17 industry publication, *Variety*.  Craven Decl. Exs. 78; B at Tr. 29-30.  Mr. Horn told an

18 industry executive, "I can assure you that if G.S.N. does a T.V. show, then there will be

19 legal action."  *Id*.  Mr. Horn used the existence of this lawsuit to warn TV producers and

20 others away from Plaintiffs, telling one industry insider, "I have and continue to be in a

21 very expensive, nasty lawsuit with Falls Media over the I.P. to "Would You Rather...?".

22 I don't know if NBC knows that or not."  *Id*. at Exs. 568; B at Tr. 30-31.  Mr. Horn

23 admitted that he wrote an internal memo about this strategy, stating, "Remind these

24 guys that they must disclose their situation to anyone they make a deal with," and that

25 what he meant by that was "this nasty, expensive litigation with you."  *Id*. at Ex. B at Tr.

26 25.

27

28

Case Nos.  CV-06-3459-ABC and CV-07-0571-ABC
MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF
JUDGMENT CONSISTENT WITH SPECIAL VERDICT AND
PERMANENT INJUNCTION

The irreparable harm caused by the presence of another entity using the mark was confirmed again by Zobmondo when it released an industry newsletter complaining about Plaintiffs' attempt to enter the market. *Id.* at Ex. 90. Not only did Mr. Horn admit that sales of confusingly similar toys and games "cannibalize each other," and that "most inventors and entrepreneurs don't have the financial means to defend their rights legally," he also recognized that having to split sales could quickly put a small company out of business – much like Defendants' infringement sidelined Plaintiffs' success in games. Once known as "the Would You Rather guys," Plaintiffs were nearly wiped out by a tsunami of infringing sales advertising. They were unable to control defendants' use of their mark—and because of the litigation spending pressure placed on them by Defendants in this case—they were unable to act against any third parties. *See, e.g., id.* at Ex. 443; C at Tr. 77-78; D at Tr. 63-64. Plaintiffs also encountered many examples of actual confusion, such as written communications and personal accounts of confusion, including at trade shows. *See, e.g. id.* at Exs.182; 233; C at Tr. 64-72; D at Tr. 57- 58; F at Tr. 37-38; G at RFA Nos. 81-84. Expressing feigned outrage at the confusion that he, himself, created, Mr. Horn effectively game himself injunctive relief by telling the industry, "[b]uyers, manufacturers, consumers, inventors and industry professionals must say 'enough is enough.'" *Id.* at Ex. 90. It is time for Mr. Horn to be enjoined from continuing to cause the confusion and marketplace harm that he complained about in his "Cost of Confusion" article.

If any more evidence were needed that infringement of the WOULD YOU RATHER..? mark is irreparable harm, Defendants supplied it through their own enforcement actions. As the jury learned, Defendants threatened a company named Cahootie with an infringement action seeking injunctive relief if they did not immediately stop using the WOULD YOU RATHER…? mark. *Id.* at Ex. 666. Defendants also enforced "their" WOULD YOU RATHER…? mark against a card

1  game sold at Target.  *Id.* at Ex. 87.  Thus, even Defendants understood that competitive
2  uses of the WOULD YOU RATHER…? mark would be harmful.

### 2.  Legal Remedies Are Inadequate Against These Defendants

4      "Injunctive relief is the remedy of choice for trademark and unfair competition
5  cases, since there is no adequate remedy at law…."  *Century 21 Real Estate Corp. v.*
6  *Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see Nike, Inc. v. Nikepal Int'l, Inc.*,
7  05-CV-1468, 2007 U.S. Dist. LEXIS 66686, at *26 (E.D. Cal., September 7, 2007).  As
8  Professor McCarthy observes, "Damages caused by trademark infringement are by their
9  very nature irreparable and not susceptible of adequate measure for remedy at law."  5
10  McCarthy on Trademarks and Unfair Competition § 30:2, at 30-8-9 (cum. supp. 3/2007)
11  (quotations omitted).  In addition, in trademark cases, there is an interest to protect the
12  public and the right's holder from continuing consumer confusion.

13      Where Defendants have already demonstrated an unwillingness to be deterred
14  from infringement, Plaintiffs should not be forced to repeatedly file suit any time
15  infringement occurs in the future.  *See Continental Airlines, Inc. v. Intra Brokers, Inc.*,
16  24 F.3d 1099, 1104-05 (9th Cir. 1994) ("the multiplicity of suits necessary to be
17  engendered if redress was sought at law, all establish the inadequacy of a legal remedy
18  and the necessity for the intervention of equity").

19      Moreover, a plaintiff is not required to prove likely repetition of infringing
20  actions in order for a permanent injunction to issue—especially where a defendant was
21  found to have acted with oppression, fraud, or malice during a substantial period of its
22  infringement and unfair competition, and refused to stop, even after suit was brought.
23  *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986)
24  (abuse of discretion to refuse to grant permanent injunction where district court "failed
25  to recognize that the reform of the defendant must be irrefutably demonstrated and
26  total.") (citations omitted).  Here, Defendants not only continued their infringement after
27  the filing this action, but expanded their "WOULD YOU RATHER…?"-branded

28

product line with the introduction of additional games and books, conducted radio advertising on nationally syndicated radio programs like Glenn Beck (thereby continuing to thwart any effective marketing by Plaintiffs),and attempted to enforce their supposed rights in the brand – in at least one instance, allowing Target to believe that *they* owned the registered trademark for WOULD YOU RATHER…?   *See City of Carlsbad*, 850 F.Supp.2d. at 1113 ("an injunction should be granted where defendant's intentions are in doubt") (citing 5 J. Thomas McCarthy, *Trademarks and Unfair Competition*, §30:11 (4th ed. 2011).

Further underscoring the need for permanent injunctive relief, Defendants continue to advertise their WOULD YOU RATHER…? branded products, including in Target, where Zobmondo has successfully blocked Plaintiffs from selling their games for years.  Kristoffy Decl. ¶3.  Recent advertising circulars from Target and Walmart indicate that Zobmondo's WOULD YOU RATHER…? game continues to be promoted by Defendants and these key retailers, in spite of the jury's finding of infringement.  Craven Decl. Ex. H.  Plaintiffs are also aware that Defendants are conducting a radio advertising campaign, which tells consumers that Zobmondo is the source of the WOULD YOU RATHER…? game (*see* Craven Decl. ¶28) – causing further confusion and damage to Plaintiffs' trademark rights.[2]

Finally, as explained herein, Defendants' testimony during the punitive damages phase of the case heightens Plaintiffs' concerns and the need for immediately injunctive relief.  Although the only financial documents he produced demonstrated that he has significant company equity as of late last year, Mr. Horn came to trial ready to plead poverty.  He claimed that "as of [the prior] Sunday" he had roughly $12,000 in his personal account, and less than $200,000 in Zobmondo's company account.  *Id.* at ¶2.  Though that testimony is dubious and cannot be accepted as truth in the face of the

---

[2] Additionally, the compensatory damages do not account for the fact that Defendants' infringing sales affected Plaintiffs' pricing, including discounts and rebates (both past and continuing) necessary to try to compete against Defendants' head start.

1  financial documents he produced, Mr. Horn was essentially trying to tell the jury that he

2  is "judgment proof."  In that vein, Mr. Horn and his counsel have threatened insolvency,

3  and Mr. Horn appears to have taken steps to transfer or dispose of company and

4  personal assets. [3]   At trial, Mr. Horn admitted that in the year before he expected this

5  case to go to trial (originally set for early 2011), he paid himself an unprecedented

6  $2,427,921 and repaid certain investor capital investments.  *Id*.  These actions suggest

7  that Defendants began the process to deplete the company of assets in anticipation of a

8  loss at trial, which underscores the insufficiency of legal relief, alone.  These actions

9  also heighten the importance of immediate injunctive relief and judgment by this Court.

### 3.  The Balance of Hardships Favors Plaintiffs

11      Third, as for the balance of hardships, "[i]f the defendants sincerely intend not to

12  infringe, the injunction harms them little; if they do, it gives [the trademark owner]

13  substantial protection of its trademark."  *See Dick Bruhn, Inc.*, 793 F.2d at 1135-36.

14  The balance of hardships favors the Plaintiffs, whose trademark has been infringed, over

15  the Defendants, who would suffer no cognizable harm separate from the legal obligation

16  to cease promoting or undertaking the infringement.  *See City of Carlsbad*, 850

17  F.Supp.2d at 1113 ("There is no harm to [Defendant] since an injunction would merely

18  require [Defendant] to comply with the law.")

19      On the other hand, without the injunction, Defendants will continue to sell

20  infringing products into retail channels such as Target, Walmart, and Barnes & Noble,

21  and block Plaintiffs (either fully or partially) from those important channels.  For

22  example, from 2010-2011, Target and Walmart comprised 76% of Zobmondo's sales.

23  Craven Decl. ¶2.  Plaintiffs are entitled to sell their products to all retailers, and support

24  their products with a promotional campaign similar to their other brands that did not

25  _____

26  [3] An asset search indicates that Mr. Horn transferred interest in his personal property to his father. Craven Decl. ¶2.  Moreover, a current Secretary of State status inquiry shows

27  that, in just the past two weeks, Zobmondo's corporate status is "suspended."  *Id*. at Ex. I.  Plaintiffs intend to conduct an asset examination upon entry of judgment.

28

1  suffer years of infringement.  Kristoffy Decl. ¶ 4.  Also, Plaintiffs should not have to be

2  concerned over consumer confusion, and over having their promotions exacerbate that

3  confusion or encourage sales of a competitor's infringing product.  As Zobmondo's

4  sales representative agreed in his deposition, if Spin Master advertises the WOULD

5  YOU RATHER…? branded games, that could benefit Zobmondo.  Craven Decl. Ex. E

6  at Tr. 206:14-207:2.  Under these circumstances, the balance of hardships sharply favors

7  Plaintiffs.  *See Hokto*, 810 F.Supp. 2d at 1033 ("If the injunction does not issue,

8  Defendant Concord would be more likely to continue violating Hokto Kinoko's rights,

9  imposing a hardship on Plaintiff.").

10         **4.  The Public Interest Is Served By Enforcing Trademark Rights On**

11                **Behalf Of Their Rightful Owners**

12         As explained, the public interest is well-served by permanently enjoining a

13  defendant who has been found liable, and whose conduct during a significant portion of

14  its infringement consisted of oppression, malice or fraud.  The public has an interest not

15  to be confused any longer.  "[T]he Lanham Act is at heart a consumer protection

16  statute."  *Trafficschool.com v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).  As the

17  Third Circuit has held, in the context of trademark litigation, public interest is just "a

18  synonym  for the right of the public not to be deceived or confused." *Optician's*

19  *Association of America v. Independent Opticians of America,* 920 F.2d 187, 197 (3d Cir.

20  1990).[4]  The Court should therefore issue a permanent injunction to protect the public

21  interest from continued confusion and mistake.  *See Reno Air Racing Ass'n*, 452 F.3d at

22  1137; *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (Lanham Act

23  is "designed to protect consumers who have formed particular associations with a mark

24  from buying a competing product using the same or substantially similar mark");

___

25  [4] *See Inwood Labs., Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 854 n. 14 (1982) ("[T]he

26  infringer deprives consumers of their abilities to distinguish among goods" of
   competitors.).   "Thus, the purchasing public is an unnamed party in every action for

27  trademark infringement."  *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*,
   640 F. Supp. 928, 932 (S.D.N.Y. 1986).

28                                          -10-

*Resource Lenders, Inc. v. Source Solutions, Inc.,* 404 F.Supp.2d 1232, 1250 (E.D Cal. 2005) ("Here, because a likelihood of confusion was demonstrated, the public interest would be served by issuance of an injunction.")

Following this logic, the public interest would naturally be served by an injunction if there were already a determination that consumers were likely to be confused.  Here, the jury found infringement, and found that Defendants acted with oppression, malice, or fraud in the years prior to and after the lawsuit.  Therefore, the public interest would be served if the Court issued a permanent injunction in this case.

In summary, all of the equitable factors favor entry of a permanent injunction.  If an injunction is not issued, the jury's verdict would be rendered meaningless: Defendants could continue its unlawful acts; continue to cause consumer confusion; prevent Plaintiffs' from controlling their WOULD YOU RATHER…? trademark; and block Plaintiffs from retail and promotional channels and opportunities – all to the detriment of Plaintiffs.

**B. The Court Should Issue a Permanent Injunction That Prevents Defendants From Using WOULD YOU RATHER…? And Any Confusingly Similar Variations**

Federal Rule of Civil Procedure 65(d) requires that an injunction be specific in terms and describe in reasonable detail the prohibited and required conduct.  To enforce the jury's verdict, the injunction in this case should prevent Defendants from using WOULD YOU RATHER…? or any variation of the phrase, either as a large title or a small title (or tagline), on any products.  When the Ninth Circuit remanded this case back for trial, it observed that Defendants did not appear to "need" the WOULD YOU RATHER…? mark to sell their products.  *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1118 (9th Cir. 2010).  As just one example, Zobmondo sold its line of books under the name THE OUTRAGEOUS GAME OF BIZARRE CHOICES through 2009.  *Id.*  As the jury further learned, Mr. Horn had asked Hasbro to use this same title,

Case Nos.  CV-06-3459-ABC and CV-07-0571-ABC
MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF
JUDGMENT CONSISTENT WITH SPECIAL VERDICT AND
PERMANENT INJUNCTION

1  only bigger than it previously appeared, on the game board boxes that Hasbro was

2  selling.  *Id.* at Ex. B at Tr. at 129:25-130:9.  The jury learned that Mr. Horn had

3  brainstormed over 120 other name choices.  *Id.* at Ex. 25.

4      The Court has the authority under ample Ninth Circuit precedent to permanently

5  enjoin all use of the WOULD YOU RATHER…? mark "or any confusingly similar

6  variations thereof."  *See Reno Air Racing Ass'n*, 452 F.3d at 1137-38.[5]  In *Reno Air*

7  *Racing,* the district court enjoined used of the pylon logo, Reno Air Races' marks, and

8  any confusingly similar variations, but the defendant sought assurance that he could

9  depict "any and all checkered pylons in the future."  The Ninth Circuit declined the

10  invitation, affirmed the injunctive relief as worded, and consequently recognized that

11  defendant could be enjoined from using more than just "a checkered pylon circled by

12  two airplanes" (i.e. the "pylon logo.")

13      An infringing defendant should be required to keep a "safe distance from the

14  margin line" of plaintiffs' registered marks (the "safe distance" rule).  *See Plough, Inc.*

15  *v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963); *Sinhdarella, Inc. v. Vu*, C07-04353,

16  2008 U.S. Dist. LEXIS 14742, at *20 (N.D. Cal., Feb. 12, 2008); *Virgin Enters., Ltd. v.*

17  *Virgin Petroleum, Inc.*, CV99-12826, 2000 U.S. Dist. LEXIS 8100, at *20 (C.D. Cal.,

18  ─────────────────

19  [5] *See also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp.2d 1072, 1083 (C.D. Cal.
     2012) (granting injunction against use of the Mark in question "or any mark confusingly
20  similar"); *Exxon Mobil Corp. v. Future Group LLC*, 2012 WL 2553560 at *5-6 (E.D.
     Cal. 2012) (enjoining use of Plaintiff's "Mobil" marks "and/or any other mark that is
21  confusingly similar to any of Plaintiff's MOBIL Marks); *MGM Studios, Inc. v. Grokster*,
     518 F. Supp. 2d 1197, 1229 (C.D. Cal. 2007) (enjoining use of "all of Plaintiffs'
22  copyrighted works 'whether now in existence or later created.'"); *Gucci America, Inc. v.*
     *Pieta*, No. 04-9626, 2006 U.S. Dist. LEXIS 96701, at*25 (C.D. Cal., January 23, 2006)
23  (enjoining infringement of "Plaintiff's intellectual property rights in all Gucci
     trademarks" and not just those found on the counterfeiting caps at issue) (emphasis in
24  original); *Chanel, Inc. v. Vallego*, No. 04-2449, slip op. at 8 (C.D. Cal., February 4,
     2005) (enjoining "not only the seven marks at issue in this action, but all other Chanel
25  marks as well" due to strong customer demand for the brand); *American Honda Motor*
     *Co., Inc. v. Pro-Line Protoform*, 325 F. Supp. 2d 1081,1086 (C.D. Cal. 2004) (enjoining
26  infringement of any of Honda's trademarks including, but not limited to, the five marks
     at issue); *Broadcast Music, Inc. v. United States ShoeCorp.*, 211 U.S.P.Q. 43, 44-45,
27  (C.D. Cal., December 29, 1980) (enjoining use of "any song in BMI's repertoire" in
     addition to the seven songs at issue in the litigation).

28

Case Nos.  CV-06-3459-ABC and CV-07-0571-ABC
MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF
JUDGMENT CONSISTENT WITH SPECIAL VERDICT AND
PERMANENT INJUNCTION

January 19, 2000); *Playboy Ents., Inc. v. Chen*, CV96-3417, 1997 U.S. Dist. LEXIS 21916, at *35 (C.D. Cal., October 1, 1997).  This often includes more than the accused mark at issue and confusingly similar marks and specifically extends to combinations thereof.  For example, in *AAA, Inc. v. Triple A Auto Glass, LLC*, 2012 U.S. Dist. LEXIS 45781, *8-9  (D. Ariz. Apr. 2, 2012), the court recently enjoined use of AAA's marks, including "AAA" or "TRIPLE A" and confusingly or deceptively similar marks, and additionally prohibited "[u]sing the letter 'A' or any multiple combination of letters 'A' in any form or manner that would tend to identify or associate Defendants or their business or services with AAA, including, without limitation, in the marketing, promotion, advertising, identification, sale or distribution of goods or services, or in any other manner."  Mr. Horn had many alternatives he considered and could have used instead of Plaintiffs' WOULD YOU RATHER…? trademark, and he does not "need" to use WOULD YOU RATHER…?, YOU'D RATHER WHAT?, or WOULDN'T YOU RATHER…? or other marks that – at this point, and after years of infringement – are simply too close to Plaintiffs' trademark.  As the case law provides, Defendants must ordered to keep a "safe distance" from the WOULD YOU RATHER…? trademark.  Requiring the infringer to keep a safe distance is particularly appropriate in this case, where the defendant has confused retailers and consumers believe that Plaintiffs "imitated" his mark and that he is the victim of infringement caused by a company selling a "knock-off."  Plaintiffs will likely have to deal with the taint caused by that confusion for years.  They should at least have the benefit of an injunction that prohibits the sale of confusingly similar names.

Where the infringing use is for a similar service or good—here, books and games—a broad injunction "is especially appropriate." *See Perfumebay v. eBay*, 506 F.3d 1165, 1177 (9th Cir. 2007) (enjoining the defendant's use of "perfumebay" and perfume-bay" on similar online sales of perfume ); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) (affirming a broad injunction enjoining use of any

1   "logo confusingly similar to GoTo's mark" on "practically identical" search engine

2   services).  An injunction should "restrain acts which are of the same type or class as

3   unlawful acts which the court has found to have been committed or whose commission

4   in the future unless enjoined, may fairly be anticipated from the defendant's conduct in

5   the past." *MGM Studios, Inc. v. Grokster*, 518 F. Supp. 2d 1197, 1226-27 (C.D. Cal.

6   2007).

7        Further, an injunction is not overbroad even if it enjoins using the mark on "other

8   services which did not prompt [the] lawsuit." *Internet Specialties West v. Milton-*

9   *DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009) ("We find no abuse in the

10  district court's determination that, in order to avoid confusion to consumers, MDE must

11  abandon **all use** of the name 'ISPWest.com.'") (emphasis added).  In *Internet*

12  *Specialties West,* the court enjoined the defendant from "[u]tilizing any of ISWest's

13  marks or any variation, derivative, or shorthand notation thereof, or any terms similar

14  thereto, including ISPWest, in connection with any product or service, or sham products

15  or services, in any medium, which would give rise to a likelihood of confusion as to the

16  source of such products or services." *Id.*  Because likelihood of confusion is critical to

17  the breadth of the injunction, a broad ban on **all use** of Plaintiffs' WOULD YOU

18  RATHER…? trademark is appropriate here.  *Id.* at 993 n.5.  Thus, Defendants should

19  not be allowed to use the mark in connection with related entertainment products such

20  as television shows, calendars, software or DVDs, comic strips, or promotional

21  products.[6]

22        It is well-established that a trademark plaintiff who is "entitled to relief, is entitled

23  to effective relief; and any doubt in respect of the extent thereof must be resolved in its

24

25  [6] Plaintiffs also note that the relatedness of these products was well-established at trial, including through testimony from Defendant Mr. Horn and various witnesses for

26  Plaintiffs.  Craven Decl. Exs. C-E.  Also, Spin Master owns the '486 registration, as well as a number of pending federal trademark applications for the WOULD YOU

27  RATHER…? mark covering these goods and services, which further evidences the relatedness of the products and services.  Craven Decl. Ex. J.

28

1   favor as the innocent producer and against the [defendant], which has shown by its

2   conduct that it is not to be trusted." *Reno Air Racing Ass'n*, 452 F.3d at 1137-38

3   (quoting *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924)).[7]

4   "Although the terms of such an injunction impose a heavier burden on an

5   infringing party with a redesigned mark than is imposed on a newcomer with a similar

6   mark, 'a party who has once infringed a trademark may be required to suffer a position

7   less advantageous than that of an innocent party.'" *Wolfard Glassblowing Co. v.*

8   *Vanbragt*, 118 F.3d 1320, 1322-23 (9th Cir. 1997) (enforcing an injunction and noting

9   that courts should consider whether the new mark is confusingly similar, otherwise the

10  enjoined defendant "could simply make a tiny change and start a new trademark contest

11  all over again in the context of the contempt hearing as to the use of the 'new' format.")

12  Therefore, the Court should enjoin any use or promotion of WOULD YOU RATHER

13  (regardless of punctuation) as a mark, title, or tagline or confusingly similar variations

14  of the mark in connection with board games, books, card games, calendars, electronic

15  and DVD games, and other entertainment products.  The Court's injunction should

16  extend to promotional efforts, including social media, internet, radio, television, trade

17  show, and print advertisements featuring the WOULD YOU RATHER…? trademark.

18  ## III.   THE COURT SHOULD ORDER DEFENDANTS TO DELIVER UP

19  ## INFRINGING MATERIALS FOR DESTRUCTION[8]

20  Under Section 36 of the Lanham Act, the Court may order the Defendants to

21  deliver up all infringing labels, signs, prints, packages, wrappers, receptacles,

22

---

23  [7] Moreover, "[i]n a clear case, the court has power to enjoin an act, which if done alone
    could be legal, but when performed in the context of a totality of acts does constitute

24  unfair competition."  5 McCarthy § 30:4, at 30-13 (citations omitted).

25  [8] Even if the Court is not inclined to order destruction of all products bearing the
    WOULD YOU RATHER…? trademark, it should at least order destruction of the
    packaging of the products shown to the jury, which they unanimously found to

26  constitute both willful infringement and unfair competition through conduct consisting
    of oppression, malice or fraud.  *See Playboy Ents., Inc. v. P. K. Sorren Export Co. of*

27  *Florida*, 546 F. Supp. 987, 997 (S.D. Fla. 1982) (ordering destruction of shirts bearing
    infringing rabbit logo).

28

advertisements, and all plates, molds, matrices, and other means of making the same, for destruction when trademark infringement has been established.  15 U.S.C. § 1118.  It is well established that Section 36 of the Lanham Act encompasses destruction of infringing products themselves.  *See American Honda Motor Co., Inc. v. Pro-Line Protoform*, 325 F.Supp.2d 1081, 1086-1087 (C.D. Cal. 2004) (ordering defendant to surrender all "products, labels, tags, signs, prints, packages, videos, photos, advertisements, computer program files, electronic images, plates, molds, or matrices that depict, bear, use, or enable the unauthorized reproduction of any of the [defendant's] Marks or any colorable imitation of any of the [defendant's] Marks…."); *Canon U.S.A., Inc. v. Tiger Wholesale*, No. CV 92-6382, 1994 WL 219995, *4 (C.D. Cal., March 29, 1994) ("An order for the destruction of the infringing goods is an appropriate remedy for trademark infringement."); *City of Carlsbad*, 850 F.Supp.2d at 1115-16 (defendant required to "deliver to the City for destruction **all materials** in [Defendant's] possession, custody, or control bearing or displaying the Marks or the Logo or any word, term, name, symbol, or representation or combination thereof similar to the Marks or the Logo.") (emphasis added).  Therefore, the Court should order Defendants to 1) provide an inventory of all products and materials bearing the WOULD YOU RATHER…? mark, and 2) deliver up for destruction the product and materials within the scope of the permanent injunction that the Court enters.

## IV.   THE COURT SHOULD ORDER DEFENDANTS TO SUBMIT A REPORT OF COMPLIANCE WITH THE COURT'S JUDGMENT

Upon the issuance of a permanent injunction for federal trademark infringement, Section 34 of the Lanham Act provides that "[a]ny such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."  15 U.S.C.

-16-

§ 1116(a).  *See, e.g., Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.*, 2003 WL 23705747, *2 (C.D. Cal. 2003).  The Court should require submission of a compliance report here.

## V.   PREJUDGMENT INTEREST SHOULD ACCRUE ON THE MONEY JUDGMENT

Prejudgment interest may be awarded to compensate a party for the lost opportunity to use the money at issue between the time a claim accrues and judgment, in order to fully compensate the injury.  *West Virginia v. United States*, 479 U.S. 305, 308-9 (1987); *Schneider v. County of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002); *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) ("Prejudgment interest is to be thought of as an ingredient of full compensation that corrects judgments for the time value of money.") (citations omitted).  Prejudgment interest may also be awarded under Section 35 of the Lanham Act in cases of intentional infringement such as this.  *See Gorenstein Ents., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436-37 (7th Cir. 1989) (noting that prejudgment interest should be presumptively available for federal violations); *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, 2010 U.S. Dist. LEXIS 51171, *7 (C.D. Cal. May 24, 2010) (awarding prejudgment interest where the defendant's Lanham Act violations "were far from innocent or inadvertent); *Int'l Consulting Services v. Cheap Tickets, Inc.*, 2007 U.S. Dist. LEXIS 71689, at *28-30 (S.D.N.Y. 2007) (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)).  Additionally, prejudgment interest has been awarded in trademark cases where the award of the defendant's profits represents an actual loss for the plaintiff, as is the case here.  *See, e.g. Ford Motor Co. v. Kuan Tong Industrial Co.,* 697 F. Supp. 1108, 1109-10 (N.D. Cal. 1987); *Louis Vuitton, S.A. v. After Dark Boutique*, 680 F. Supp. 1507, 1511 (N.D. Fla. 1988).

It is also within the Court's discretion to choose what rate should apply.  The California Constitution, Article 15, section 1, provides a 7% per annum rate for tort

-17-

1  claims.  Other district courts have awarded and calculated prejudgment interest at the

2  prime rate.  *See, e.g., Gillette Co. v. Wilkinson Sword, Inc.*, 1992 U.S. Dist. LEXIS

3  1265, at *35 (S.D.N.Y., Feb. 3, 1992) (awarding prejudgment interest at prime);

4  *Fritcher v. Health Care Service Corp.*, 301 F.3d 811, 820 (7th Cir. 2002) (prejudgment

5  interest awarded at prime rate of 8.33% where no statutory rate applied).  Calculating

6  "per annum" interest (like in *Gorenstein*) at the current prime rate of 3.25% would total

7  $1,821,218.88 in interest (compound).  Plaintiffs request that, at a minimum, the Court

8  award simple interest at the current prime rate of 3.25% (amounting to $279,793.80.)

9  **VI.    CONCLUSION**

10         For the foregoing reasons, this Court should enter the proposed judgment attached

11  hereto as Exhibit A.

12                                          Respectfully submitted,

13

14   Dated:  November 13, 2012          By:  /Bobby A.  Ghajar/

15                                          PILLSBURY WINTHROP SHAW PITTMAN
                                           BOBBY A.  GHAJAR
16                                          KELLY W.  CRAVEN
                                           725 South Figueroa Street, Suite 2800
17                                          Los Angeles, CA  90017-5406

18                                          DAVIDSON LAW GROUP
                                           BEN M.  DAVIDSON
19                                          11377 West Olympic Boulevard
                                           Los Angeles, CA  90064
20

21                                          Attorneys for Plaintiffs
                                           Spin Master, Ltd., Justin Heimberg, and David
22                                          Gomberg

23

24

25

26

27

28                          -18-